**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| GRAYSON CONSULTING, INC., | ) | |
| | ) | No. 2:07-cv-02992-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALAN M. GRAYSON, *et al.*, | ) | |
| | ) | No. 2:07-cv-00593-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on a motion for protective order filed by Vision and a corresponding motion to compel filed by Alan Grayson, the AMG Trust, and Grayson Consulting, Inc. (collectively, Grayson). Grayson v. Cathcart, 07-cv-00593, ECF Nos. 950, 970; Grayson Consulting, Inc. v. Cathcart, 07-cv-02992, ECF Nos. 588, 606. Also currently pending is a motion for sanctions for spoliation of evidence filed by plaintiffs Alan M. Grayson and the AMG Trust against defendant Vision International People Group, P.L. (Vision). Grayson v. Cathcart, 07-cv-00593, ECF No. 897. For the reasons that follow, the court grants in part and denies in part the motions for a protective order and to compel. The court also denies the motion for spoliation sanctions.

1

## I.  BACKGROUND

Because the facts of this case are well known to all parties, the court dispenses with a recitation of them.  Instead, the court provides a brief procedural background relating to the motions addressed herein.

### A. Vision's Motion for Protective Order, <u>Grayson v. Cathcart</u>, 07-cv-00593, ECF No. 950, & Grayson's Motion to Compel, <u>Grayson v. Cathcart</u>, 07-cv-00593, ECF No. 970.

On March 19, 2013, Grayson deposed Roberto Piona, Vision's current chief executive officer and designated Rule 30(b)(6) witness.  During the deposition, Vision objected to several of the questions posed to Mr. Piona.  Vision argues that these questions seek information that is protected by the attorney-client privilege and/or the work product doctrine.  The parties were unable to resolve their dispute and Vision timely filed the instant motion on March 26, 2013.  <u>See</u> Local Rule 30.04(C).  Grayson opposed Vision's motion on April 9, 2013 and simultaneously challenged Vision's assertion of privilege as to four documents it has withheld from Grayson.  Grayson has not moved to reconvene Mr. Piona's deposition.

These matters have been fully briefed and the court has also had the benefit of the parties' oral argument at the July 1, 2013 hearing.  In addition, the court has reviewed both the transcript of Mr. Piona's deposition and the documents that are the subject of Grayson's motion.

### B. Alan Grayson & The AMG Trust's Motion for Spoliation Sanctions, <u>Grayson v. Cathcart</u>, 07-cv-00593, ECF No. 897.

Alan Grayson and the AMG Trust filed the complaint in <u>Grayson v. Cathcart</u>, 07-cv-00593, on February 28, 2007, asserting claims against a number of defendants, including Vision and former Vision executives Paul Jarvis and Dmitry Buriak.  Vision

was served with the summons and complaint on June 28, 2007.  Plaintiffs filed a second amended complaint on August 20, 2008.

Sometime before April 2008, plaintiffs sent Vision their first sets of interrogatories and requests for production.  Vision responded to these discovery requests on April 21, 2008, and – after a lengthy stay in discovery – supplemented their written responses with the production of several hundred pages of documents on May 25, 2012.  Many of the documents produced were cover sheets for faxes sent from Vision's offices to other co-defendants in this case.  The substantive materials sent along with those fax cover sheets were mostly absent from the production.

Grayson filed its spoliation motion on December 28, 2013, arguing that Vision has spoliated both documents and the testimony of former Vision general counsel Ismini Papacosta.  Grayson seeks either an adverse inference instruction or an award of default judgment against Vision.  The matter has been fully briefed and the court had the benefit of the parties' oral argument at the July 1, 2013 hearing.

## II.  DISCUSSION

The court discusses these three pending motions in turn.

### A.  Vision's Motion for Protective Order, <u>Grayson v. Cathcart</u>, 07-cv-00593, ECF No. 950.

Vision seeks a protective order relating to a series of questions asked by Grayson's counsel during Mr. Piona's deposition.  Vision asserts that the questions all sought information that is protected by attorney-client privilege, the work product doctrine, or both.  Def.'s Mot. for Protective Order 2.  Grayson admits that it seeks information that Ms. Papacosta, Vision's in-house counsel, relayed to Mr. Piona but asserts that this information was neither legal advice nor attorney work product.  In fact,

3

Grayson argues that Ms. Papacosta was directly involved in the fraudulent stock loan scheme and the information it seeks from Mr. Piona is necessary to its case because Ms. Papacosta cannot be located.

Federal Rule of Civil Procedure 26(b)(1) allows parties to take "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The attorney-client privilege, however, "affords confidential communications between lawyer and client complete protection from disclosure." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). Courts within the Fourth Circuit use the following test to determine whether attorney-client privilege exists:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

AVX Corp. v. Horry Land Co., No. 07-cv-03299, 2010 WL 4884903, at *4 (D.S.C. Nov. 24, 2010) (quoting Hawkins, 148 F.3d at 383). Under the crime-fraud exception, the attorney-client privilege is lost "'when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud.'" In re Grand Jury Investigation, 352 F. App'x 805, 807 (4th Cir. 2009) (quoting United States v. Under Seal, 102 F.3d 748, 750-51 (4th Cir. 1998)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

Materials that have been prepared by an attorney in anticipation of litigation are attorney work product that may be protected from discovery. Hennessey v. United States Agency for Int'l Dev., 121 F.3d 698, at *5 (4th Cir. Sep. 2, 1997) (Table). Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the production and protection of attorney work product. Rule 26(b)(3) states,

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). . . .
>
> If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B). Work product may be fact work product or opinion work product. In re Allen, 103 F.3d 582, 607 (4th Cir. 1997). While fact work product "is discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship," opinion work product, which contains an attorney's mental impressions, conclusions, opinions, or legal theories, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Id.

### 1.     Piona Deposition, Page 8

During Mr. Piona's deposition, Grayson's counsel and Mr. Piona engaged in the following colloquy:

> Q:     Ms. Papacosta was the legal counsel for Vision, is that correct?
> A:     At that time, she was legal counsel for Vision, right.
> Q:     Did you review the complaint that was filed?
> A:     No, I didn't.
> Q:     Did you talk to Ms. Papacosta about the complaint?

5

> A:      Just a few little things.
>
> Q:      What did she tell you?

Piona Dep. 8:7-19, Mar. 19, 2013.  Counsel for Vision objected to the question "What did she tell you?" on the basis of work product protection and instructed Mr. Piona not to answer.

Grayson's broadly worded question seeks a response that could easily include privileged material as well as protected work product, such as Ms. Papacosta's mental impressions, opinions, or legal advice about the complaint in this case.  Vision's objection was proper.

### 2. Piona Deposition, Page 13-14

During the deposition, Grayson's counsel and Mr. Piona engaged in the following colloquy:

> Q:      At the time she left in 2009, were you aware that Ms. Papacosta's name was appearing on documents relating to Bancroft?
>
> A:      I knew only about some emails.
>
> . . . .
>
> Q:      Why did you not ask her what the emails concerned?
>
> A:      I thought that with all the assurance that I received by her and by Mr. Paul Jarvis in reality the case was not so important for us.
>
> Q:      So you did ask her about the emails, correct?
>
> A:      No, about the email I didn't ask.  I didn't ask her about the emails.
>
> Q:      What type of assurance did she give you?

Piona Dep. 12:20-23; 13:13-21.  Counsel for Vision objected to the question "What type of assurance did she give you?" on the basis of attorney-client privilege and work product doctrine.  The colloquy continued:

> Q:      Why did you want an assurance from her?

6

> A: It's not that I wanted – I receive some words that for me represent like assurance that the case was not so important for us.
>
> . . . .
>
> Q: The words, they were put in an affidavit?
>
> A: Yes, they was.
>
> Q: Who asked her to prepare the affidavit?
>
> A: This was the American lawyer.
>
> Q: Do you know which one? Mr. Duffy?
>
> A: Yes, Mr. Duffy.
>
> Q: Do you know what the purpose of the affidavit was?

Piona Dep. 14:1-4, 12-19. Counsel for Vision objected to the question "Do you know what the purpose of the affidavit was?" on the basis of attorney-client privilege.

Grayson's questions both seek background information about an affidavit that Ms. Papacosta prepared in preparation for the pending litigation. See Pls.' Resp. to Mot. for Protective Order, ECF No. 970, Ex. 1, Dec. of Ismini Papacosta. This line of questioning implicates Ms. Papacosta's work product as well as that of Vision's South Carolina attorneys. These questions may also implicate privileged legal advice that Vision's South Carolina counsel provided to Vision. Vision's objections to these questions were proper.

### 3. Piona Deposition, Page 20

During the deposition, Grayson's counsel and Mr. Piona engaged in the following colloquy:

> Q: In Exhibit FF, the second paragraph, you wrote the following sentence. "The allegations against it are not only false but with no legal substance or factual reality." That's what you wrote. What is the basis for that statement by you?
>
> . . . .
>
> A: . . . . This is connected to the information that I receive from Ismini Papacosta and [Vision's Cypriot outside counsel] Nairy Der Arakelian.

7

> Q: So Ms. Papacosta, she's the one that told you the allegations were false?
>
> . . . .
>
> Q: Did you have any basis for that statement other than what Ms. Papacosta told you?
>
> . . . .
>
> A: Okay. The point is that Vision didn't never have business in USA and Vision never participate to stock loan scheme or something like that. It's not part of the business never of Vision group.

Piona Dep. 19:15-20:16. Counsel for Vision objected to the question "So Ms. Papacosta, she's the one that told you the allegations were false?" on the basis of attorney-client privilege and work product doctrine.

The information Grayson seeks is both attorney work product prepared for the purposes of this litigation as well as privileged legal advice. Vision appropriately objected to this question.

### 4.     Piona Deposition, Page 26-28

During the deposition, Grayson's counsel and Mr. Piona engaged in the following colloquy:

> Q: Before [Ms. Papacosta] left the company, you were aware that some documents existed showing she was doing some work for Bancroft, correct?
>
> A: No. I knew only about the emails we have in our evidence.
>
> Q: How did you become aware of the emails?
>
> . . . .
>
> Q: Let me try it again. You read some emails by Ms. Papacosta, correct?
>
> A: No. I read the email that Ms. Papacosta sent from her computer.
>
> Q: That's the email I'm talking about. Those emails that you saw reference Bancroft, correct?
>
> A: Yes, correct.
>
> Q: Did you ask her what they were about?

> A:   No, I didn't.
>
> Q:   Why not?
>
> A:   Because, as I said, she said that these were connected to personal work that she was doing for Mr. Paul Jarvis, and because, as I said before, they assure me that Vision was not involved in all these things, so I didn't go deep to this particular email.
>
> Q:   What personal work did she say she was doing for Mr. Jarvis?

Piona Dep. 26:16-28:5.  Counsel for Vision objected to the questions "How did you become aware of the emails?" and "What personal work did she say she was doing for Mr. Jarvis?" on the basis that these questions asked for communications with counsel "following the litigation."  Piona Dep. 26:22-24; 28:6-10.

While the communications referenced above certainly occurred between a client and counsel after litigation has commenced, it does not necessarily follow that the communications are subject to attorney-client privilege or work product protection.  The information that Grayson seeks is not related to legal advice given by Ms. Papacosta or sought from Ms. Papacosta.  Nor do Grayson's questions inquire about work product prepared in anticipation of litigation.  Vision's objections to these questions were improper.

### 5.     Piona Deposition, Page 31

During the deposition, Grayson's counsel and Mr. Piona engaged in the following colloquy:

> Q:   So did Mr. Jarvis come back to the company to Cyprus to help [Ms. Papacosta] gather the documents [in response to litigation pending in this court]?
>
> A:   No.
>
> Q:   How did he assist?
>
> . . .

9

> A:  Sorry? Yes, sure, they speak each other so that Ms. Papacosta can take all the document that are required by Mr. Paul Jarvis.
>
> Q:  Did Ms. Papacosta tell you about her conversations with Mr. Jarvis?
>
> . . .
>
> Q:  Do you know if Ms. Papacosta interviewed Mr. Jarvis?

Piona Dep. 30:24-31:15. Counsel for Vision objected to the questions "Did Ms. Papacosta tell you about her conversations with Mr. Jarvis?" and "Do you know if Ms. Papacosta interviewed Mr. Jarvis?" on the basis of both attorney-client privilege and work product doctrine. Piona Dep. 31:11-16.

Grayson's questions go to conversations that Ms. Papacosta, in her role as Vision's in-house counsel, had with Mr. Jarvis, Vision's former CEO, about collecting information for this pending litigation. The answers to these two specific questions are not privileged, but if Mr. Piona had answered these questions in the affirmative, then any further information about Ms. Papacosta's discussions with Mr. Jarvis would undoubtedly be privileged. If Mr. Piona had answered these questions in the negative, then there would be no further information at all. As a result, no harm has arisen from Vision's improper objections to these questions.

### 6.     Piona Deposition, Page 68

Finally, during the deposition, counsel for Grayson and Mr. Piona engaged in the following colloquy:

> Q:  My general question to you, sir, is can you explain why Ms. Papacosta is sending out communications regarding Bancroft using Vision legal department fax communications?
>
> A:  No idea, no idea.
>
> Q:  Was she allowed to do this?
>
> A:  Not at all.

10

> Q:     Did she tell you as part of her investigation that she had done this?

Piona Dep. 67:24-68:7. Vision's counsel objected to the question "Did she tell you as part of her investigation that she had done this?" Counsel further instructed Mr. Piona "not to answer any [questions about] communications [he] had with counsel concerning the lawsuit." Piona Dep. 68:8-10.

Ms. Papacosta investigated the issues underlying the pending litigation as part of her job as Vision's inside counsel. The information that Grayson seeks is protected by the work product doctrine.

For the reasons described above, the court grants in part and denies in part Vision's motion for a protective order. Vision's motion is granted to the extent that it relates to the questions discussed above that are found on pages 8, 13, 14, 20, 31, and 68 of Mr. Piona's deposition transcript. Vision's motion is denied to the extent that it relates to the questions discussed above that are found on pages 26 and 28 of Mr. Piona's deposition transcript.

### B. Grayson's Motion to Compel, <u>Grayson v. Cathcart</u>, 07-cv-00593, ECF No. 970.

In response to Vision's motion for a protective order, Grayson asks for the court to review *in camera* several documents for which Vision has asserted attorney-client privilege, attorney work product protection, and/or common interest protection. The documents at issue are:

- Two memoranda authored by Ms. Papacosta and addressed to Mr. Piona and Mr. Buriak, Bates-stamped Vision 00486-00490. Vision asserts attorney-client privilege and attorney work product protection.

- An eighteen-page document sent by Ms. Papacosta to Mr. Jarvis, Bates-stamped Vision 00499-00516. Vision asserts attorney-client

11

> privilege, attorney work product protection, and common interest privilege.

- Email correspondence between Mr. Jarvis and counsel for Vision, Bates-stamped Vision 00491. Vision asserts common interest privilege.

At the July 1, 2013 hearing, the court ordered Vision to produce these documents for *in camera* review. Draft Hr'g Tr. 12:21-13:2, July 1, 2013. Counsel for Vision produced the documents to the court on July 2, 2013. In a letter to the court, Vision's attorney stated that the documents marked Vision 00499-00516 had been improperly excluded from production to Grayson. Those documents have now been produced to Grayson and need not be addressed in this order.

The court has completed its *in camera* review of documents marked Vision 00486-00491. The first memorandum authored by Ms. Papacosta – marked as Vision 00486, 00489, and 00490 – describes the complaint and summons filed in this litigation and provides legal advice to Vision regarding the lawsuit. The second memorandum authored by Ms. Papacosta – marked as Vision 00488 and 00487 – summarizes a conference call in which Papacosta, Vision executives, and other counsel for Vision participated. The second memorandum also includes a summary of legal advice provided to Vision executives by Ms. Papacosta and others. Finally, the email communication between Jarvis and counsel for Vision – marked as Vision 00491 – contains statements relating to Vision's planned defenses in this case. All of these documents contain attorney work product and/or attorney-client communications that Vision rightly excluded from production to Grayson. The only discoverable material contained in these documents is the 2008 contact information for Paul Jarvis, which appears in Vision 00491.

For these reasons, the court grants in part and denies in part Grayson's motion to compel. Unless Vision has already done so, it must provide Grayson with the cell phone numbers and email address listed for Paul Jarvis in Vision 00491. Otherwise, Grayson's motion to compel is denied.

### C. Alan Grayson & The AMG Trust's Motion for Spoliation Sanctions, Grayson v. Cathcart, 07-cv-00593, ECF No. 897.

Alan Grayson and the AMG Trust allege that Vision has spoliated two types of evidence: documents and the witness testimony of Ms. Papacosta.

Spoliation is the "destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). The court's ability to impose sanctions for spoliation stems from its "inherent power to control the judicial process and litigation." Id. The power "is limited to that necessary to redress conduct 'which abuses the judicial process.'" Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). Accordingly, "'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" Id. (quoting West, 167 F.3d at 779). The district court has "broad discretion in choosing an appropriate sanction for spoliation" and the court's decision is reviewed on appeal for abuse of discretion. Id.

Sanctionable spoliation of evidence occurs only when three prerequisites are met. First, the altered or destroyed evidence must have been relevant to the litigation. See Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995); Silvestri, 271 F.3d at 591. Second, the party must have been under a duty to preserve the evidence at the

time it was altered or destroyed. See Silvestri, 271 F.3d at 591. A party has a duty to preserve evidence during litigation and at any time "before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Id. (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). Finally, the spoliating party must have acted with the requisite level of intent, which varies depending on the sanction imposed.

When dealing with adverse inference charges, the sanction is only appropriate if the spoliator's "willful conduct resulted in [the evidence's] loss or destruction." Vodusek, 71 F.3d at 156 (citing Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 217-18 (1st Cir. 1982)). The court may impose the sanction even in the absence of bad faith. See Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 450 (4th Cir. 2004). The harsher sanctions of dismissal and default judgment require a showing of "bad faith or other 'like action,'" unless the spoliation was so prejudicial that it prevents the non-spoliating party from maintaining his case. See Silvestri, 271 F.3d at 583 (quoting Cole v. Keller Indus., Inc., 132 F.3d 1044, 1047 (4th Cir. 1998)); David C. Norton, et al., Fifty Shades of Sanctions: What Hath the Goldsmith's Apprentice Wrought?, 64 S.C.L.R. 459, 466-68 (2013).

The court addresses separately each of the spoliation claims asserted by Alan Grayson and the AMG trust.

### 1. Spoliation of Documents

Alan Grayson and the AMG Trust first argue that "copious amounts of documents relating to Bancroft and Vision's direct involvement with Bancroft have disappeared from Vision's offices with no explanation." Pls.' Mot. for Spoliation Sanctions 6. Specifically, these plaintiffs argue that Vision has failed to produce a variety of

documents that were created between May 2005 and August 2006. Id. As explained above, a party alleging spoliation must demonstrate that the party who lost or destroyed evidence had a duty to preserve that evidence at the time it was rendered unavailable.

Alan Grayson and the AMG Trust contend that Vision's duty to preserve evidence arose sometime before May 2005 because, at that time, co-defendant Bancroft Ventures, Ltd. was embroiled in separate litigation involving the State of California and other investors in the 90% Stock Loan Program. Id. at 9. These plaintiffs argue that Vision knew about the California litigation because "Vision was acting as Bancroft's counsel, in fact, as reflected in the documents, in connection with corporate governance, disposition of assets, and loan administration issues." Id. at 10. Moreover, they assert that "Grayson and others had sent correspondence regarding defaulted loans to the IOMA Group [in 2005, and] Vision knew all of this because it had received documents regarding the litigation." Id. at 9. Vision's knowledge of various lawsuits and its position as Bancroft's counsel triggered its duty to preserve, these plaintiffs argue. Id. at 7.

Vision responds that it is not a law firm and has never served as counsel for Bancroft or any other entity. Def.'s Resp. to Mot. for Spoliation Sanctions 6. Vision also argues that it had no duty to preserve evidence until it was served with the complaint in this case in June 2007.

Vision's duty to preserve evidence is only triggered when Vision should have reasonably anticipated litigation. Alan Grayson and the AMG Trust have not sufficiently explained how Vision's awareness of the State of California's lawsuit against Bancroft reasonably put Vision on notice that it was likely to become embroiled in tangentially related litigation with parties not named in the California lawsuit. As a result, these

plaintiffs have failed to demonstrate that Vision had a duty to preserve documents related to this litigation two years before the litigation was filed.

Even if the court were to presume that the allegedly missing documents were relevant to this litigation, and that their absence caused prejudice to Alan Grayson and the AMG Trust, the spoliation motion fails because these plaintiffs have not demonstrated that Vision had a duty to preserve documents created in the 2005-2006 timeframe.[1]

### 2. Spoliation of Ismini Papacosta

Alan Grayson and the AMG Trust next argue that Vision spoliated evidence by failing to make Ismini Papacosta available as a witness. Ms. Papacosta was Vision's legal counsel from June 7, 2005 until November 15, 2009. Def.'s Resp., Ex. 2; Def.'s Surreply, Ex. 1. Vision fired Ms. Papacosta on August 13, 2009, Def.'s Surreply, Ex. 1, well after the parties had agreed that discovery would be suspended as to Vision and a variety of other defendants.[2] See, e.g., Third Am. Scheduling Order for Consolidated

---

[1] Alan Grayson and the AMG Trust also have not shown that Vision has the requisite level of culpability required for the court to grant the requested spoliation sanctions – either an adverse inference instruction or default judgment. Courts in the Fourth Circuit classify a party's culpability for document destruction in one of four categories according to a fact-specific inquiry. Those categories are negligence, gross negligence, willfulness, and bad faith. Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 529-30 (D. Md. 2010). The sanctions that Grayson seeks require a showing of willful or bad faith behavior, or that Vision's behavior was so prejudicial as to effectively deny Grayson the ability to maintain its claims. Id. at 534-36. Willful destruction of documents is "intentional, purposeful, or deliberate conduct." Id. at 530. For spoliation to be willful, the party must have intended to destroy the evidence. Id. Bad faith spoliation is even more egregious than willful destruction of evidence. For bad faith destruction of evidence, the party must have willfully destroyed the evidence with the intention of depriving its opponent of the evidence. Id.; Norton, Fifty Shades of Sanctions, supra, at 467.

Grayson states that "the absence of any explanation for [the] loss [of documents] can only be ascribed to Vision's fear that the documents would implicate it in a scheme of fraud." Pls.' Mot. for Spoliation Sanctions 15. This conclusory assertion is not enough to show that Vision spoliated documents willfully or in bad faith.

[2] While the parties did not agree to an official stay of the case as to Vision until May 2010, see Order Consolidating Cases, May 7, 2010, ECF No. 751, the parties repeatedly agreed that the discovery deadlines listed in the court's scheduling orders did not apply to Vision. Third

Cases 4-5, July 29, 2008, ECF No. 446.  Her last day of work at Vision was September 4, 2009, but she was paid until November 15, 2009, per the terms of her employment agreement.  Id.  While Vision has produced documents that included Ms. Papacosta's address as of 2007, the company states that it does not know her current address or contact information.

As an initial matter, it is true that a party can be said to have spoliated evidence when it "fails to preserve or produce evidence-including the testimony of witnesses." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 450 (4th Cir. 2004).  In Hodge, a plaintiff injured by products that fell from Wal-Mart's shelves alleged that the store had spoliated evidence by failing to get the statement and contact information of an eyewitness to the accident.  Id. at 448-49.  The Fourth Circuit upheld the district court's denial of spoliation sanctions, finding that Wal-Mart's employee did not engage in spoliation by losing or destroying the witness's contact information or potential testimony.  Rather, Wal-Mart never possessed that information to begin with.  Since the witness's information was never in Wal-Mart's control, Wal-Mart could not be guilty of spoliation.  Id. at 450-51.

Applying Hodge to the present case, Ms. Papacosta was under Vision's control while she remained a Vision employee.  Ms. Papacosta was a Vision employee until the autumn of 2009, more than two years after the company had been served with the complaint in this litigation.  Vision also named Ms. Papacosta as a witness with relevant information in its interrogatory responses of April 21, 2008.  See Pls.' Mot. Ex. 14 at 3.  Because Vision was well aware of this litigation and had identified Ms. Papacosta as a witness with knowledge, and because the Fourth Circuit requires that parties to litigation

---

Am. Scheduling Order for Consolidated Cases 4-5, July 29, 2008, ECF No. 446;  Fourth Am. Scheduling Order for Consolidated Cases 5, Aug. 28, 2008, ECF No. 463.

must "notify the opposing party of evidence in the hands of third parties," Victor Stanley, 269 F.R.D. at 523, Vision had a duty to preserve Ms. Papacosta's testimony by notifying Alan Grayson and the AMG Trust that Ms. Papacosta would be leaving Vision's employ.

Vision does not appear to dispute that Ms. Papacosta's testimony would be relevant to this litigation. Indeed, it cannot do so, as it has previously identified Ms. Papacosta as a witness with information relevant to this case.

Having satisfied two of the elements necessary to demonstrate spoliation, Alan Grayson and the AMG Trust must finally show that Vision acted with the requisite level of intent necessary to warrant either an adverse inference instruction or the award of default judgment to plaintiffs. Despite these plaintiffs' arguments to the contrary, Vision's lack of a current address for Ms. Papacosta does not necessarily amount to willful or bad faith destruction of evidence. Alan Grayson and the AMG Trust have been provided with the most recent address that Vision has on file for Ms. Papacosta. Ms. Papacosta has been under no obligation to provide Vision with updated contact information since she left the company several years ago. While Vision certainly erred when it failed to notify Alan Grayson and the AMG Trust that Ms. Papacosta was leaving the company, that error could just as easily indicate negligence as willfulness or bad faith, especially since active discovery was suspended at the time Ms. Papacosta left Vision.

Alan Grayson and the AMG Trust have not presented evidence that demonstrates that Vision's actions amount to the willful or bad faith spoliation of Ms. Papacosta's testimony. Nor have these plaintiffs sufficiently demonstrated that Vision had a duty to

preserve evidence relating to this litigation in 2005 and 2006. As a result, the motion for spoliation sanctions fails in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** Vision's motion for a protective order, Grayson v. Cathcart, 07-cv-00593, ECF No. 950, and Grayson Consulting, Inc. v. Cathcart, 07-cv-02992, ECF No. 588. Vision's motion is granted to the extent that it relates to the questions discussed in this order which are found on pages 8, 13, 14, 20, 31, and 68 of Mr. Piona's deposition transcript. Vision's motion is denied to the extent that it relates to the questions discussed in this order which are found on pages 26 and 28 of Mr. Piona's deposition.

The court **GRANTS IN PART AND DENIES IN PART** Grayson's motion to compel, Grayson v. Cathcart, 07-cv-00593, ECF No. 970, and Grayson Consulting, Inc. v. Cathcart, 07-cv-02992, ECF No. 606. Unless it has already done so, Vision is **DIRECTED** to produce to Grayson within fourteen (14) days of the date of this order the email address and telephone numbers that are listed for Paul Jarvis in the document Bates-stamped Vision 00491. Otherwise, Grayson's motion to compel is **DENIED** with respect to the remainder of the documents it seeks.

Finally, Alan Grayson and the AMG Trust's motion for sanctions for spoliation of evidence, Grayson v. Cathcart, 07-cv-00593, ECF No. 897, is **DENIED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 31, 2013**
**Charleston, South Carolina**