# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| GRAYSON CONSULTING, INC., | ) | |
| | ) | No. 2:07-cv-02992-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALAN M. GRAYSON, *et al.*, | ) | |
| | ) | No. 2:07-cv-00593-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Vision International People Group, Limited's renewed motion to dismiss and its separate motion for summary judgment. These motions are filed as ECF Nos. 989 and 991, respectively, in <u>Grayson v. Cathcart</u>, Docket No. 07-cv-00593 ("the '593 Case"); they are also filed as ECF Nos. 615 and 616, respectively, in <u>Grayson Consulting, Inc. v. Cathcart</u>, Docket No. 07-cv-02992 ("the '2992 Case"). For the reasons stated below, the court grants the motion to dismiss and denies as moot the motion for summary judgment.

## I. BACKGROUND

Because the facts of this case are well known to all parties, the court dispenses with a recitation of them. Instead, the court provides a brief procedural background relating only to the motions addressed herein.

Plaintiffs Alan M. Grayson and the AMG Trust filed their third amended complaint in the '593 Case on February 4, 2013. That complaint asserts fifteen causes of action, eleven of which are asserted against Vision International People Group, Limited ("Vision"), a Cypriot entity with its principal place of business in Cyprus:

- (i) Fraud (third cause of action);
- (ii) Aiding and abetting fraud (fourth cause of action);
- (iii) South Carolina Uniform Securities Act fraud (fifth cause of action);
- (iv) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (sixth cause of action);
- (v) Negligent misrepresentation (seventh cause of action)
- (vi) Aiding and abetting breach of fiduciary duty (tenth cause of action);
- (vii) Conversion (eleventh cause of action);
- (viii) Civil conspiracy (twelfth cause of action);
- (ix) Violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") (thirteenth cause of action);
- (x) Fraudulent conveyance (fourteenth cause of action); and
- (xi) Quantum meruit (fifteenth cause of action).

Plaintiff Grayson Consulting, Inc.'s complaint in the '2992 Case asserts seventeen causes of action, eleven of which are asserted against Vision:

- (i) § 542 turnover (first cause of action);
- (ii) § 544(b)/S.C. Code § 27-23-10 Actual Fraud/§§ 550-51 (second cause of action);

|       |                                                                                          |
| ----- | ---------------------------------------------------------------------------------------- |
| (iii) | § 544(b)/S.C. Code § 27-23-10 Constructive Fraud/§§ 550-51 (third cause of action);      |
| (iv)  | § 548 Actual Fraud/§§ 550-51 (fourth cause of action);                                   |
| (v)   | § 548 Constructive Fraud/§§ 550-51 (fifth cause of action);                              |
| (vi)  | § 549 (seventh cause of action);                                                         |
| (vii) | Conversion (tenth cause of action);                                                      |
| (viii)| Quantum meruit (eleventh cause of action);                                               |
| (ix)  | Constructive trust (twelfth cause of action);                                            |
| (x)   | Accounting (thirteenth cause of action); and                                             |
| (xi)  | Injunction (seventeenth cause of action).                                                |

Vision filed both its motion to dismiss for lack of personal jurisdiction and its motion for summary judgment on April 15, 2013. After receiving extensions of time, Alan Grayson, the AMG Trust, and Grayson Consulting, Inc. (collectively, "Grayson") filed a consolidated response to Vision's motions and several other dispositive motions on June 18, 2013. Vision replied to Grayson's response on June 25, 2013.

## II. DISCUSSION

In its motion to dismiss, Vision asserts that it is not subject to the court's exercise of personal jurisdiction. Grayson counters that personal jurisdiction is proper on the basis of both South Carolina's long-arm statute and Federal Rule of Civil Procedure 4(k)(2).

A plaintiff must base his claim for personal jurisdiction "on specific facts set forth in the record." Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F.Supp. 306, 310 (D.S.C. 1992) (Norton, J.). "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Labs., Inc. v. Akzo,

N.V., 2 F.3d 56, 60 (4th Cir. 1993).  While, on a motion to dismiss, a court deciding a personal jurisdiction question must draw all reasonable inferences in favor of the plaintiff, "the court need not credit conclusory allegations or draw far-fetched inferences."  Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc., --- F. Supp. 2d ---, 2013 WL 3155760, at *2 (D.S.C. 2013) (quoting Masselli & Lane, P.C. v. Miller & Schuh, P.A., 215 F.3d 1320, at *1 (4th Cir. May 30, 2000) (table)).

**A. Specific Jurisdiction Based on S.C. Long-Arm Statute.**

Personal jurisdiction over an out-of-state defendant may be either general or specific.  In this case, Grayson appears to argue only that it may exercise specific jurisdiction over Vision pursuant to the state's long-arm statute.  See Pls.' Consolidated Resp. 51 ("This court may exercise in personam jurisdiction over these defendants based upon specific jurisdiction.")  As a result, the court confines its discussion on this topic to specific jurisdiction.  Vision argues that it does not have sufficient minimum contacts with South Carolina for this court to exercise specific jurisdiction.  Grayson responds that jurisdiction is proper because Vision was intimately involved in the 90% Stock Loan Program.

"A court may exercise specific jurisdiction when 'the out-of-state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of action arise[s] directly from that activity.'"  Sonoco, 877 F. Supp. 2d at 405 (quoting ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 331–32 (D.S.C. 1999)); see also S.C. Code Ann. § 36–2–803.  Minimal, isolated or unsolicited contacts, however, will not suffice.  Id.  A district court may exercise personal jurisdiction over a defendant the

applicable state long-arm statute confers jurisdiction and if the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir.1993). South Carolina's long-arm statute provides that:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's ... (c) commission of a tortious act in whole or in part in the State; [or] (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

S.C.Code Ann. §§ 36-2-803(1)(c) & (d). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

With respect to personal jurisdiction purposes, the due process clause is satisfied if a defendant has purposefully availed himself of the privilege of conducting business in the forum state by establishing sufficient minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Burger King v. Rudzewicz, 471 U.S. 462, 475–76 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Sonoco, 877 F. Supp. 2d at 405 (quoting World-Wide Volkswagen, 444 U.S. at 297).

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over

> national borders. . . . But, when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.

Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory, 283 F.3d 208, 214 (4th Cir.2002) (internal quotations omitted). "The weaker the contacts, however, the less likely it is that jurisdiction is reasonable." In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 352 (D. Md. 2004).

> The Fourth Circuit has
>
> synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which [courts] consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations omitted). "Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction." Sonoco, 877 F. Supp. 2d at 405.

In the business context, courts examining whether a defendant has engaged in purposeful availment under the first prong of the specific personal jurisdiction test have looked to the following factors:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

Geometric, 561 F.3d at 278 (internal citations omitted).

The operative complaints in the '593 and '2992 Cases describe the many ways in which Paul Jarvis, Vision's former chief executive officer, played an important role in the 90% Stock Loan Program. For example, the complaints allege that Jarvis frequently communicated with co-defendants based in South Carolina in order to transact business related to the Stock Loan Program. See, e.g., Pls.' Resp. Exs. 29, 39, 41, & 50. In addition to his role as Vision's CEO, Jarvis was the sole officer of Bancroft Ventures, Ltd. ("Bancroft"), an entity that acted as the "lender" for the loans that Derivium Capital, LLC made to Grayson. The parties appear to agree that Jarvis directed Vision attorney Ismini Papacosta to provide legal services to Bancroft; the evidence shows that both Jarvis and Papacosta sent faxes and emails from Vision's offices to companies and individuals who had a role in the 90% Stock Loan Program. See, e.g., Pls.' Resp. Exs. 101-05. As further evidence of Vision's connection to the 90% Stock Loan Program, Grayson presents an invoice from Vision Holdings, Ltd. that charged Bancroft roughly $12,000 for "consultancy services." Pls.' Resp. Ex. 76. Counsel for Vision explained at the July 1, 2013 hearing that this invoice memorializes the transfer of money from Bancroft to Total Eclipse International, Ltd., a company also owned by Jarvis, for services that Jarvis provided to Bancroft. Vision Holdings – a Vision subsidiary that is not a defendant in this case – acted as an intermediary for the transfer, and Vision derived

no benefit from this transfer.

Though it is clear that Jarvis and Papacosta used Vision resources to complete work for Bancroft, Grayson does not explain how the actions of these Vision employees must implicate Vision itself. Indeed, there is no evidence that indicates that Jarvis or Papacosta acted on Vision's behalf or in Vision's interest when they participated in the 90% Stock Loan Program. See, e.g., Pls.' Resp. Ex. 83 (email correspondence with Paul Jarvis stating that "a meeting relating to Bancroft Ventures needs to be held"); id. Exs. 91, 94-95 (facsimiles, including one on Vision letterhead, signed by Papacosta as "Internal Legal Counsel, Bancroft Ventures Limited"); id. Ex. 96 (email from Jarvis's Vision email account transacting Bancroft business); and id. Ex. 101 (email from Papacosta's Vision email account identifying herself as "counsel to Bancroft Ventures Limited").

> Grayson argues that
>
> the issue of agency is highly relevant to Vision's liability – if Jarvis (and Papacosta and [former Vision chief financial officer Kyriacos] Kolocassides) was acting within the scope of his employment as an agent of Vision, then that conduct is imputed to Vision under the theory of <u>respondeat</u> <u>superior</u> (even if Jarvis acted contrary to Vision's express instructions).

Pls.' Resp. 61. This argument is unavailing. First, Grayson has failed to supply evidence that the actions taken by Jarvis and other Vision employees were taken within the scope of their employment. The fact that many messages were sent from Vision email accounts or fax machines does not prove that those communications were sent within the scope of these employees' work at Vision, especially since none of the substance of these communications mention Vision or its interests. The evidence presented could just as easily show that Jarvis and his subordinates misused Vision resources to do non-Vision

8

work.[1]  Second, while Grayson cites a number of cases for the proposition that a jury must decide any facts tending to prove the existence of an agency relationship, see, e.g., Gathers v. Harris Teeter Supermarket, Inc., 317 S.E. 2d 748, 752 (S.C. Ct. App. 1984), none of those cases suggest that an alleged agency relationship modifies the personal jurisdiction analysis that the court must undertake.

Nor does Grayson explain how Vision directed its activities to South Carolina. Vision maintains neither an office nor an agent in South Carolina; owns no property here; has not deliberately engaged in business activities in the state, made in-person contact with a South Carolina resident for business purposes, or communicated with South Carolina residents about business being transacted; and has not signed any agreement that applies South Carolina law or creates contractual duties that arise in South Carolina.

In short, Grayson has not shown that Vision purposefully availed itself of the privilege of conducting business in South Carolina or that the company has any meaningful connections to the state.  As a result, Grayson has not carried its burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over Vision.  Cf. Debt Relief Network, Inc. v. Fewster, 367 F. Supp. 2d 827, 829-30 (D. Md. 2005) (declining to exercise personal jurisdiction over a foreign corporation on the basis that its agent resided in the forum state when there was no evidence that the corporation had sufficient minimum contacts with the state).  Because Grayson has not demonstrated

---

[1] Grayson cites South Carolina Insurance Co. v. James C. Greene & Co., 348 S.E. 2d 617, 624 (S.C. Ct. App. 1986) for the proposition that, under the doctrine of respondeat superior, "the principal is liable in addition to the agent, not by reason of his consent to be liable, but by operation of law."  This case is ultimately unhelpful to Grayson, as it also explains that an agent must act within the scope of his employment in order to respondeat superior liability.  Grayson has not shown that Jarvis and others were acting within the scope of their employment at Vision when they worked on behalf of Bancroft and communicated with some of the other defendants in this case.

that Vision purposefully availed itself of the privilege of conducting activities within South Carolina, the court need not consider the other two prongs of the specific personal jurisdiction test. It is apparent that the court cannot exercise specific personal jurisdiction over Vision pursuant to South Carolina's long-arm statute.

### B. Jurisdiction Under Fed. R. Civ. P. 4(k)(2) & Pendent Personal Jurisdiction

Vision also argues, in a footnote, that it is not subject to personal jurisdiction under the broader nationwide service provision found in the RICO statute because the court's exercise of personal jurisdiction over Vision would violate due process. Grayson responds that Vision is, indeed, subject to the court's exercise of personal jurisdiction under RICO. Because the court has personal jurisdiction over Vision with respect to the RICO claim, Grayson argues, the court should also exercise pendent personal jurisdiction over the other claims against Vision because all of these claims share a common nucleus of operative fact.

Rule 4(k)(2) of the Federal Rules of Civil Procedure is, essentially, a federal long-arm statute. Saudi v. Northrop Grumman Corp., 427 F.3d 271, 273 (4th Cir. 2005). Rule 4(k)(2) states that:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> **(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> **(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2)(A)-(B). Three requirements must be met before a court can obtain personal jurisdiction over a foreign corporation pursuant to Rule 4(k)(2): (1) the suit must arise under federal law; (2) the defendant must not be subject to personal

jurisdiction in any state court; and (3) the defendant must have contacts with the United States consistent with the Constitution and laws of the United States. Saudi, 427 F.3d at 275. The third requirement is an inquiry into whether the exercise of personal jurisdiction over a defendant would comport with the due process clause.

The parties do not appear to dispute that the '593 and '2992 Cases arise, in part, under federal law. Likewise, the parties appear to agree that Vision is not subject to personal jurisdiction in any state court. What remains to be considered is whether the exercise of personal jurisdiction under Rule 4(k)(2) would comport with due process.

As detailed above, the exercise of specific jurisdiction comports with due process if a defendant has established sufficient minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. The exercise of general jurisdiction over a defendant requires a greater showing – that the defendant's contacts with the forum are of a continuous and systematic nature. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). In the context of an assertion of personal jurisdiction pursuant to Rule 4(k)(2), the relevant forum is the United States as a whole, not an individual state. "Federal Rule of Civil Procedure 4(k)(2) cannot be used to obtain personal jurisdiction over a foreign corporation where . . . the foreign corporation's contacts with the United States fail to establish any proper basis for specific or general jurisdiction." Saudi, 427 F.3d at 273.

Grayson's assertion that personal jurisdiction is proper pursuant to RICO and Rule 4(k)(2) fails for the same reasons that doomed its assertion of specific personal jurisdiction. That is, Grayson has not shown that Vision should reasonably anticipate being haled into court in this country. Grayson has simply not demonstrated that

Vision's contacts with the United States are enough to warrant the exercise of personal jurisdiction over it.

Grayson has not demonstrated that the exercise of personal jurisdiction over Vision – whether pursuant to the South Carolina long-arm statute or Rule 4(k)(2) – would pass constitutional muster. As a result, the court grants Vision's motion to dismiss

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** Vision's motion to dismiss for lack of personal jurisdiction, Grayson v. Cathcart, Docket No. 07-cv-00593, ECF No. 989, and Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992, ECF No. 615. Because the court grants Vision's motion to dismiss, it **DENIES AS MOOT** Vision's motion for summary judgment, Grayson v. Cathcart, Docket No. 07-cv-00593, ECF No. 991, and Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992, ECF No. 616.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 22, 2013**
**Charleston, South Carolina**